please the court. My name is John Cranor. I'm representing the appellant in this matter, Nate Bocchino. Your Honors, we know that Section 1022 of 29 U.S. Code requires that a pension plan publish and distribute to all participants in the plan a summary plan description known as an SPD. We also know that the purpose of the SPD is to quote, reasonably apprise participants and beneficiaries of their rights and obligations under the plan, namely the requirements respecting eligibility for participation and benefits and the description of the circumstances which might result in a participant's disqualification. Counselor, can I ask you a question? Yes, Your Honor. You're not coming, you didn't come to court to insist upon compliance with the SPD? No. Okay. Because if you were insisting on compliance with the SPD, he wouldn't get any of the 1%, correct? Correct. So why are we even talking about whether something should or shouldn't have been in the SPD? Which do you want to enforce, the SPD or the plan? Well, my argument is that it should have been in the SPD and the fact that it wasn't misled the plaintiff into what the defendants now contend is a disqualification. And I say that if the disqualification that they're talking about is not in the SPD and the plaintiff relied on what the SPD said in terms of disqualification, then he should be entitled to the benefit that was taken away from him. It's as simple as that, Your Honor. All right. Well, did the, does the record show that he relied on the SPD? Didn't he accept when he turned in his return the figure that was given to him? Yes. Well, that's my whole point though. What the plaintiff in this matter relied on was simply the fact that when he reached what he thought was the correct retirement age for him, 69, that he would go to the plan office and tell them he was retiring and they would calculate the benefit he was entitled to and he would receive it. That's what he understood. But in reading the plan, there's nothing in the plan that says that because he had worked between 65 and 69, he loses a benefit. That's the whole problem here. He lost the benefit because the trustees are interpreting Section 6.5, five words or four words in Section 6.5 to mean that if you work in covered employment between age 65, which is the normal retirement age, the SPD doesn't even tell you that. They talk about 62. But if you work beyond 65, you lose the benefits if you work 40 hours in a month or more. Well, the SPD doesn't tell you anything other than the $85 multiplied by the pension credits. No, it goes beyond that. It tells you the grounds upon which you can be disqualified from receiving a pension benefit. And it says that after you retire, not before, but after you retire, if you work in covered employment 40 or more hours a week, you will be disqualified for each month from receiving your pension. That's what it says. It doesn't say anything about losing an enhanced benefit. It doesn't say anything about working before you retire or anything else. So if anybody reading that would assume that they had the right to keep on working before they retired, and that once they retired, if they didn't go back to work in covered employment, they're entitled to all the benefits provided under the plan. The plan doesn't say that if you retire and you stop working, that you lose a benefit. It doesn't say that at all. The language that my adversary is referring to is the language that talks about... But the point is, what happened here is they're denying him the ability to get the extra one percent. Correct. Okay. They're not denying him the pension, which is what, if you look at the SPD, what if you work after you retire? It talks about if you're receiving a pension, if you're receiving a pension, then you don't get a pension if you work more than 40 hours. So that covers that situation. Indeed, the SPD doesn't really cover this situation at all, i.e., you continue working, you're not receiving a pension. Under the plan, you get an extra one percent, but what the plan giveth, the plan taketh away in the instance of working more than 40 hours. After you retire. Right. So the SPD really doesn't talk about this fact situation at all. But it's supposed to, and if it doesn't, then the plan is liable for the benefits that the employee is entitled to receive under the plan. If there is an omission, you refer to the SPD. If there's an omission, don't you refer to the plan under the case law? Well, it's not a question of an omission. It's a question of the employee being misled into thinking, if the defendant is right, if the defendant is right in their interpretation of the plan, that 6.5 DII says that, I forget the exact language, I have it written down in my notes here, but if the SPD says what they say it says about disqualification, they use the word, if benefits have not been previously disqualified, that's the language in 6.5, Your Honors. For which benefits were not suspended. You're talking about D, delayed requirement? Correct, correct. It says for which benefits were not suspended. That's the language we're talking about. They construe that to mean that if you work in covered employment before you retire, between 65 and 70 and a half, you will lose the 1% benefit for each month that you work 40 or more hours a week. Now there's nothing in the plan that even says that. You mean there's nothing in the SPD? There's nothing in the plan that says that. Well. There's nothing in the plan that says if you work beyond age 65, if you defer your employment, Delayed retirement. D, that's what it does say. Right, if you delay your retirement. What they're saying is if you delay your retirement and you work in covered employment and haven't retired, you will lose the 1% a month for each month you work 40 or more hours a week. Right. And they're relying on the words for which benefits were not suspended. Right. Now logically, that makes no sense at all. First of all, it talks about benefits already having been suspended. The plan requires that each, that the trustees notify each participant if they're in danger of losing a benefit. Well, the problem I have is that if he relied upon the SPD, then, you know, he's actually getting more under the plan than the SPD disclosed. He's getting 1% for all those months when he didn't work more than 40 hours. And I don't know how the SPD misled him. Unless you're saying that every bell and whistle having to do with benefits has to be in the SPD. Yes, yes, exactly. Every bell and whistle. No, no. It's not every, Judge, it's not every bell and whistle. What it is is he has to be apprised, reasonably apprised of their rights and obligations under the plan, including a description of the circumstances that result in disqualification. But it's more than that. The better language is in Judge McLaughlin's opinion in the Burke case that I've cited to, where the court in that particular case makes the following statement. If I can just get to the quote here. Because what the SPD, the SPD would lead them to believe it got X. And once you give, go to the plan, they weren't getting X. Here we have the SPD says you get X. The plan says you get X plus 2. The plan doesn't tell any, it doesn't say anything about this. That's the problem. You mean the SPD? The SPD doesn't say anything about what benefits he's entitled to, other than he gets a normal pension. Getting back, let me ask you a question. Go ahead. Let me put it to you another way. Assuming that he had been correctly advised when he retired of what his rights were under the plan, he would be getting exactly what he's getting now, right? No. No? No, he would have retired. He would have retired at age 65. In other words, what's the purpose, what the fund is saying, this is their argument. If you work in covered employment after age 65, if you defer your retirement, you pay a penalty by losing the 1%. But if you don't work in covered employment and you defer your retirement, you do get the 1%, which makes no sense at all. The whole purpose in giving the 1% has nothing to do whether you're working or not working. It has to do with your age. If you defer your retirement and you become older, that means actuarily you're going to receive fewer payments because you'll die earlier. Therefore, they give you more money. But what does that have to do with working? It has nothing to do with working. I can understand if somebody is retired and then they go to work, they should be penalized because the idea there is we don't want to have people on retirement competing with people that are coming along. But if you haven't retired and the plan allows you to defer your retirement, why should you lose this benefit? If this benefit was stated in the plan the way it should be stated in the plan, the logical way, there would be no loss here because he deferred his retirement. But he's not saying he read the plan and it misrepresented him. Could I just make this statement? Sure. I don't think detrimental reliance should be the law in this jurisdiction. I think that prejudice should be the law in this jurisdiction. I think that the Burke case and the cases that have come since, Gridley was decided 12 years before Burke. And Burke seems to be a much more cogently argued case. And I'm not, believe me, I'm not in a position to criticize Judge Alito. But the point that I'm making is the case that he relied on, the Payne case and the Rosen case that that relies on, don't say what he says they say. They don't talk in terms of detrimental reliance. What they talk in terms of is an estoppel. Here's what Rosen says. This was, I forget who the judge was. I think it was Judge Hunter. Quote, the principle of estoppel is the representation of fact made to a party who relies thereon with the right to so rely that may not be defined by the party making the representation if such denial would result in injury or damage to the relying party. Now, that applies to my client. What's the representation of fact here that was made to him at age 65? No representation was made to him at age 65. Nothing was said to him at age 65. I thought you said he wouldn't have kept working. Okay. When was a representation of fact made to him and what was it? There were no representations made to him. Nothing was said to him at all. What he did was when he knew that he could keep on working without being penalized because there's nothing in the plan that says he can't keep working. So the absence of the fact that he couldn't keep working without a penalty was what he relied on. He kept working. And every month he kept working, he accrued an extra 1% for his ultimate pension. He didn't. He didn't. That's the whole point. Except that if he worked more than 40 hours. A month. A month. Okay. Then he wouldn't. Then he didn't. But he didn't know that. Nobody told him that if that were the case, it should have been in the plan, then nobody would bother to continue working because there's no advantage to relying on that except to collect the salary. And if you want to collect the salary versus collecting the pension, that's a choice that he should have been able to make. The point that I'm bringing to the Court's attention is that the purpose of the summary plan description is to let him know what his rights, his obligations, his duties are. It's supposed to set forth all of the material important factors of the plan and all of the reasons for disqualification. None of that is in this plan. How would he possibly, even if he had read it, how would he possibly know based on what's there now what's there? He would never have any way of knowing what his rights and obligations and duties were under this plan other than he knew that if he retired and he worked 40 or more hours a week, he would be denied, he would not be denied a benefit. Your Honor, let me just show you how ridiculous the situation is. If you take a look at section 6.9A, which is the suspension of benefits, it's at page 162 of the appendix, it says A, it says 6.9, suspension of benefits A, benefits shall be suspended for any month in which a participant works 40 hours or more in a job category covered by a collective bargaining agreement within the geographic area of this plan. Every single person who's an iron worker would not accrue a benefit under that definition. If it's interpreted literally, because benefits shall be suspended for any month in which a participant, which is every single iron worker out there, works 40 or more hours under the collective bargaining agreement within the geographic area. Obviously, that's not what it's intended. If you look at the language, it's in the retirement area of the plan. So, obviously, it means that if you've retired, your benefits will be suspended, which is what the summary plan description says. But then it says, notwithstanding the foregoing, benefits shall not be suspended for any month after the participant's required beginning date as defined by section 6.5D. It should be E, and that's if you're 70 and a half. Well, what does that have to do with benefits being suspended? And the point that I'm trying to make is that this whole plan makes no sense at all, and what the court below did was allow the trustees just to make any interpretation they wanted, which resulted in a detriment to the employee. And the basis for that detriment is the language in section 6.5D2, which says if benefits have not been previously disqualified. If his benefits had not been previously disqualified, previous to his retirement, which they weren't, then why does that section apply? And, obviously, that's not what it's intended. I can't think of a single. All right. We'll hear from you on rebuttal. Well, I didn't reserve any time for rebuttal, Your Honor. Well, your red light is on.  I just wanted to just add one concluding point. All right. Summarize. If the employee involved in this situation had known that he could not, he would not gain any benefit from continuing to work, even though he's contributing to his employment, then there would be no basis for him to do that, to stay on working. And I believe that this court should say that because the summary plan description didn't tell him what his rights are, that whatever the trustees said at the beginning should be the benefit that he's entitled to receive. And I'll rely on my brief for everything. I have a question for you. Sit down. Yes. You say that our standard of review is changed because of a conflict of interest on the part of the trustees here. What conflict of interest is that? They wrote the plan and they're interpreting the plan. That's the conflict of interest in this particular case. I think Firestone should be the law in this jurisdiction regarding review of this matter. It shouldn't be whether or not there's an abuse of discretion. It should be a de novo review. And there's not a single word in this plan that says if an employee defers his retirement and keeps on working, that when he does retire, he loses his benefit. We understand your position. Thank you, Your Honor. Thank you. Thank you. Good afternoon, Your Honors. Joseph R. Pagano of the firm Giardina Pagano for the District Council Ironworkers Pension Fund of Northern New Jersey and its trustees. I'll make two points about the differential standard of review. And first I want to address the interesting point made by counsel in his reply brief for the first time, that when a person reads the SPD, he does not know he might forfeit something under the plan. Now, should the SPD have included the 1% rule in the terms of his forfeiture? Yes. Did it? No. Does that mean that he gets it? No. Why? Because ERISA's comprehensive scheme continually refers to the plan. In the fiduciary 404 section, it says that trustees shall conduct themselves in accordance with the terms of the plan. That's paragraph D. The very section counsel plaintiff sues under 502 in B says, to recover benefits due him under, quote, the terms of his plan, to enforce his right, quote, under the terms of the plan, to clarify rights to future benefit, quote, under the terms of the plan. So what we have here are the poll star for trustees' decisions are the plans, not the SPD. Against that background. We have said that when there is a conflict between the two documents, the SPD should control because that's what's held out for the employee to rely on. Have we not? You may have, but there's no conflict here because the 1% rule nor the terms of its forfeiture were even mentioned. Against the congressional legislative intent to follow the plan, the courts, as you know, with Judge Becker and Hauser with Judge Alito now Justice Alito and Gridley and Bernstein have all said that omissions in reporting and disclosure is irrelevant in determining eligibility. They've gone so far as to say that the only way you can get around not following the terms of the plan would be if there's equitable estoppel of extraordinary circumstances. Well, in this case, Mr. Bocchino met with the fund office in April, was told his pension's about $2,700. He decides to retire in May. The erroneous letter was not written until June, so there couldn't be promissory estoppel. He already decided to retire. The SPD, not having mentioned the 1% rule, could not be the basis for estoppel because there was no representation as to the benefit. Well, I think his point is that in the SPD, it says what if you work after you retire, and it doesn't say anything. He didn't retire. When you retire, you get a pension. As Your Honor correctly observed when counsel presented his argument, that only applies. When a person's already retired. So what we have here is what the courts have previously addressed. Alito and Gridley says distribution of an inaccurate summary plan description cannot provide a basis for equitable estoppel. And we have Bernstein saying, furthermore, we have consistently rejected estoppel claims based on simple reporting and disclosure errors such as variation between the plan summary and the plan itself. And I think this is the court's deference to the congressional intent to follow the terms of the plan. That's the marching orders Congress gave us. So the courts carved out a very differential, narrow exception for equitable estoppel. Here we don't have it. Bear in mind, plaintiff never even pled estoppel. His complaint appendix, page 25, is a single count amended complaint saying we acted arbitrarily, unreasonably, or capriciously. He doesn't even plead equitable estoppel. Why? Because it's not factually supported. It was an afterthought, but it doesn't fit. He made the decision to retire after being told that he was getting only what the SPD said he would get. Exactly, about $2,700 a month. He wound up getting 31. Actually, by working after age 65, he got 16% times the pension at normal retirement of 391 and change a month, plus under the SPD he earned an additional three and a half years pension credit for another 352.50. So he got 734 more than the SPD said, but he wants another 808 less than 352 or 455 a month more. The summary is that. It's a summary. Maybe it causes more problems than it solves, but it's just that. The plan administrator indicated that it only applies to eight out of 3,500 participants. It's a rule of limited application in an arduous trade like the ironworkers. The rule for forfeiture with respect to the 1% before you retire and 100% of your pension. If you're on pension and you work 40 hours a month more in the ironworker trade in northern New Jersey, you lose the whole thing, 100%. That's in accordance with the IRS regs and the DOL regs. This is the exact result those regs contemplate, and I'm saying the rule itself is reasonable because we're following what the DOL and the IRS said. And counsel can't extract 6.5D that gives the 1% says for the period for which benefits were not suspended. 6.9 doesn't say your pension shall be suspended or your monthly pension should be suspended if you work in covered employment. It says benefits, which is a broader word. So the scrivener, if he wanted to apply to pensions, he would have said so. Instead he said benefits. 6.5D, the 1% rules, incorporates by reference the forfeiture paragraph. Can I ask you a question? Yes. You referenced 8 out of 3,500. Where do you get that statistic? The executive director did a study. Is that in the record? Yeah. Where is it? It's on page 191 of the appendix. So that would mean that the person situated similarly to him, i.e., working after retirement. Age 65. Would be 8 out of 3,500? Yes. The iron worker trades an arduous trade. It's such an obscure rule that the young man who met with Mr. Bocchino didn't even know about the rule. His supervisor had to tell him. But then the executive director found out about it. The district court said keep the difference of, you know, money for the four months. But the plan doesn't provide for it. Equitably, by working after 65, Mr. Bocchino earned another $117,000. He had $17,000 to his vacation. He had $25,000 in an annuity fund contribution. And as I earlier indicated to the court, by working three and a half years, he got what the SPD said. Three and a half years credit at $100 a month is $350, $250 a month, plus 16% for the 16 months he didn't work more than 40 hours a month, which is $391 for a total of $743, more than the SPD said. Standard of review is differential because the plan in this case, counsel incorrectly says it doesn't, it allows the trustees here to interpret the plan and determine the amount of benefits and their decisions are binding. In view of that, the courts have consistently held that it's a differential standard of view, not de novo. And with all due respect, just like when you sit on planning board reviews, it's not the court's job to substitute its judgment for the judgment of the trustees, even if it might have decided otherwise, to search the record and see if there's a basis. It's arbitrary and capricious. Right. If there's a basis, then it's not arbitrary. And with all due respect, even in a close case, the tie goes to the trustees on the kind of plan before this court. They don't want all the courts second-guessing the trustees. The trustees acted in accordance with the plan, and there's nothing in the record to indicate that this is a conflict case where this court has to get into a sliding scale of conflict, such as an insurance company that gets a one-time premium, and it's in the insurance company's pocketbook interest to deny a benefit. There's nothing in the record that says that. This plan is self-administered, self-insured. The trustees aren't paid. No money can revert to the employers. It's a qualified plan. So when they deny an increase in a pension, it inures to the benefit of all participants, not to the trustees, not to the employers, not to any insurance company. There is no insurance company. I'll take any questions the court has. I'm content. Does the SPD refer at all to what happens if an employee, when he reaches 65, decides to continue working? Do what? Does the SPD refer to the situation where an employee decides to work past age 65? If he retires, it addresses it. If he retires and goes on pension, it addresses it. If he's over 65 and doesn't retire and take his pension, it doesn't deal with it whatsoever. It's silent. And it also says if there's any question, you should talk to the plan administrator. That's correct. The SPD says if there's a conflict, whatever that might mean, between the plan, SPD and the plan, the plan controls. That's consistent. Although that is a strange provision. It is. How are you supposed to know if there's a conflict unless you get the plan and the plan's not given out on the SPD? I didn't make up the rules. I don't think the SPD is helpful. It seems to create more litigation than it solves. And personally, from an attorney's standpoint, I'd rather give them the plan. We'll live or die and go by the plan. That's what we're told by Congress to enforce the plan, and then they tell us, you know, summarize it. So it's difficult to do. But in any event, absent a RISA that says follow the plan, the plaintiff might have a case. But the narrow exception the courts say is equitable estoppel, we don't have it here. There's no factual basis for it. Counsel, thank you. The case was well argued. We'll take it under advisement. Thank you. Thank you so much. Thank you. I'm sorry you didn't reserve for rebuttal. Well, we gave you the time. You could have reserved for rebuttal. I'm sorry. It's one of the rules. And your opposing counsel was relying upon the fact that you didn't have the time. So thank you very much. Thank you, General. Thank you, Ms. Ableton.